**UNITED STATES of America, Plaintiff,**

v.

**Ronald EBENS, Defendant.**

**Crim. No. 83 60629.**

United States District Court,
E.D. Michigan, S.D.

Feb. 23, 1987.

Frank Clardy, Washington, D.C., William Soisson, U.S. Attorney's Office, Detroit, Mich., for plaintiff.

Frank Eaman, David M. Lawson, Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER OF TRANSFER

ANNA DIGGS TAYLOR, District Judge.

This matter is before the court on defendant's motion for change of venue for prejudice in this district, filed pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure. For the reasons outlined below, this court finds that because of the saturation publicity which has surrounded this case for five years and continues, there exists in the district in which this prosecution is pending and in all other Michigan districts, as well as in the Northern District of Ohio, so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court therein. Accordingly, the motion is granted. When the defendant has formalized this motion's implicit waiver of his rights under Article III, § 2, ¶ 3, and Amendment VI of the United States Constitution to a trial by a jury of the state and district within which the crime is alleged to have been committed, the case will be transferred to the Southern District of Ohio.

Defendant stands charged pursuant to 18 U.S.C. § 245 and § 2, of violation of the civil rights of Vincent Chin, an American citizen of Chinese descent, by blows to the head with a baseball bat on June 19, 1982, resulting in Chin's death. Defendant was previously convicted by a jury in this district in June of 1984, and was thereafter sentenced to twenty five years of imprisonment by this court. Saturation publicity surrounded the trial and the events which had led up to it.

That conviction was reversed by the Sixth Circuit Court of Appeals and remand-

ed for a new trial, on September 11, 1986. 800 F.2d 1422.

Although this court denied defendant's motion for a change of venue prior to his 1984 trial, it is compelled to grant the renewed motion under the circumstances surrounding this second trial. The Court of Appeals wrote, concerning the 1984 trial, that "while it probably would have been advisable for the trial judge to have ordered a change of venue, we conclude that it was not reversible error for her to proceed to impanel the jury." To obtain the first jury, 178 veniremen were screened by questionnaires, and 159 were individually interviewed on voir dire by the court and counsel over five days. Of those, thirteen had no knowledge of the case, and of them, three were ultimately selected to sit as jurors. Those who knew of the case and were selected had denied any prejudice. This court is confident that today, a great many more veniremen would have to be screened and interviewed to select an impartial jury if, indeed, it is possible at all. It would be extremely unfortunate to make the attempt and, after calling such a large number of citizens, to be forced to change venue. Moreover, in a different venue it is likely that the week-long sequestration of the jury in a hotel, during deliberations, will not again be necessary. Accordingly, the motion is granted at this time.

The Court of Appeals found as follows concerning the publicity surrounding the first trial:

The joint appendix filed in the appellate record contains sixty-eight pages of articles from Detroit newspapers about the Chin matter. Three video tape recordings of television broadcasts were also made a part of the record. As the trial judge noted, the publicity was not only extensive but was all adverse. A Detroit attorney, Lisa Chan, formed a group known as the American Citizens for Justice, and appears to have been instrumental in publicizing the killing, the handling of the case by the Wayne County Prosecutor's office and the sentences given to Ebens and Nitz in the state court. Rallies were held and the publicity generat-

ed much television coverage including at least two special news stories on the subject and a program over national television as well. The public excoriation of the state trial judge who placed Ebens and Nitz on probation was particularly severe. The headlines can only be described as scathing. One large cartoon appearing in the Detroit News, even showed the trial judge putting a baseball bat in one ear, as if it were a pencil, and sharpening it with a pencil sharpener installed in the opposite ear.

We have carefully reviewed the extensive record made of the publicity in the case and agree that it was indeed pervasive. The question of venue is made particularly difficult because of the framework in which the prosecution arose. The nearly unanimous public judgment that Ebens and his stepson should have received jail terms and the harsh criticism of the state trial judge, followed by the federal prosecution of defendants based upon the same incident, was bound to lead to a strong public impression that justice had not been done in the state court and that it was incumbent upon the federal government to right that wrong by a second prosecution.

The situation has not improved since the filing of that opinion. The fact of the reversal of defendant's conviction in this court, the government's subsequent decisionmaking process as to whether to retry him, and its ultimate decision to do so, each precipitated a new wave of highly publicized outcry and comment reiterating the entire history of this case.

Most damaging to jury selection of all the post-reversal coverage, in the view of this court, was the October 12, 1986 Detroit News Sunday Magazine cover story on the victim's mother, Lily Chin. The magazine cover was comprised of full page color photographs of the still-grieving mother. The lengthy story inside, accompanied by more photographs, told of the tragic deterioration of her life to that of a homeless wanderer, since the death of her son. The

effect of this major feature alone, in the newspaper of largest circulation in Michigan and Northern Ohio, is extremely prejudicial to the court's ability to secure an impartial jury in this area.

Moreover, the leadership of this community, including the President and members of the Detroit City Council, who declared a day of mourning in honor of Vincent Chin and presented a memorial to his mother, have been quoted by the news media uniformly to the effect that the defendant must be punished. Similar statements have been widely publicized with attribution to the Mayor of Highland Park, the Attorney General of the State of Michigan, the American Citizens for Justice, the American Civil Liberties Union, the Archdiocese of Detroit, the Roundtable of Christians and Jews, the Latino-Americans for Social and Economic Development, B'nai Birth, the Anti-Defamation League, and the NAACP. Editorial comment, both broadcast and press, and letters to the editor, continue strenuously and unanimously to stress the fact that defendant has never been punished.

The media also, in post-reversal coverage, have continued to give full play to the factual allegations which the Sixth Circuit has found must be excluded from evidence in the second trial.

Factors such as the comment and castigation of public figures, the intensity and long duration of the publicity (since 1982), its inflammatory tone and content, and the continually repeated factual recitations, all militate toward the conclusion that a change of venue from the State of Michigan and the northern Ohio area must be granted. This court is convinced that the problem has become too severe to cure by careful voir dire, and that it would be extremely wasteful to attempt to do so. As Judge Hungate wrote in *United States v. Engleman*, 489 F.Supp. 48, 50 (E.D.Mo. 1980):

> Effective and economic judicial administration is not well served by calling an inordinate and unwieldy number of veniremen to see if an unbiased jury might be obtained, especially when it is already

apparent that a substantial chance of intolerable prejudice exists. E.g. *United States v. Carbone*, No. CR78–93T (W.D. Wash. Jan. 26, 1979).

Although the government argues for awaiting voir dire, the court finds that the logistics of trying this case are too great to wait until the eve of trial before reaching a decision on where the trial will be held.

Rule 21(a) of the Federal Rules of Criminal Procedure provides for transfer of a cause to any district, and defendant has not specified in his written motion any district as appropriate for transfer.

This court has broad discretion in choosing where to transfer the case. See *U.S. v. Angiulo*, 497 F.2d 440 (1st Cir.) *cert denied*, 419 U.S. 896, 95 S.Ct. 175, 42 L.Ed.2d 140 (1974); *U.S. v. Marcello*, 423 F.2d 993, 1004 (5th Cir.), *cert denied*, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970).

Therefore, upon execution of a written consent and waiver by defendant, and contingent upon the statement in open court by defense counsel and defendant himself that counsel has fully informed defendant of his Constitutional rights of the waiver implicit in this motion, and that said waiver is reaffirmed, this court will enter its order transferring this cause from the Eastern District of Michigan to the Southern District of Ohio.

IT IS SO ORDERED.